The opinion of the Court was delivered by
Joi-insoN, J.
The controversy between these parties, so far as the merits are concerned, involves the right of property in certain negroes, (nineteen in number,) named in the complainants’ bill. The complainants claim them as the legal representatives of Samuel McDonald, deceased, and it is conceded, that if they belonged to him at the time of his death, they are entitled to recover. The defendants derive their interest in them from Adam McDonald, the brother of Samuel McDonald, who made a bill of sale of them to defendants’ testator, Theodore Gourdin, to secure the payment of a debt due to him. The bill of sale was absolute on its face, but Gourdin at the same time executed a deed, in which he acknowledges, that it was intended to secure the debt and the right of Adam McDonald to redeem, and in which also he covenants that they shall remain in the possession of Adam McDonald, for the use of his family.
*254 The evidence justifies, perhaps, the conclusion, that old Peggy, from whom all the other negroes descended, originally belonged to Samuel McDonald; and one of the questions made in the case was, whether he had ever parted with the absolute property in them to Adam McDonald ? The Chancellor has decided that question against the defendants, and upon that decision has predicated a decree perpetually enjoining the defendants from proceeding to sell the negroes in satisfaction of the debt due to them, according to the tenor of the bill of sale, and the counterpart deed of Gourdin; and if the case depended on that question alone, it might well be doubted, whether the judgment of the Chancellor, on a question merely of fact, would not be conclusive. It is, according to the rules and practice of the Court, generally so regarded, and I am disposed so to consider it. But for myself I find it difficult to reconcile the possession of Adam McDonald, and his legal representatives, for a period of at least twenty-eight years, with the right of property in Sami. McDonald, who during all that period, was utterly destitute of every necessary of life, and the means of support, and dived and died wholly dependent on the bounty and hospitality of his friends.
Conceding, however, to the whole extent, that the property in the negroes, was in Samuel McDonald, and that the possession of Adam McDonald and his representatives after his death, was on loan, the question, which seems to have been overlooked in the Circuit Court, necessarily presents itself, to wit, whether that possession was not such a fraud upon Gourdin as’ a creditor, as to subject them to the payment of his debt?
The facts out of which this question arises, (and I propose to state them as they are assumed by complainants,) and most strongly against the defendants, are, that Samuel McDonald, being possessed of old Peggy, delivered her as a loan to his brother Adam McDonald, in 1796, or 1797. That Adam McDonald, having become indebted to Gourdin, and continuing in possession of Peggy and her descendants, in 1807 mortgaged them for the payment of that debt. That Adam McDonald *255 retained the possession of the negroes from that time to the time of his death, which happened between 1813 and 1817, and from that time until after the death of Samuel McDonald, in 1824, they remained in the possession of the administratrix, and the administrator de bonis non of Adam McDonald, Gour-din’s debt still remaining unpaid. An attempt was also made to prove that Gourdin had notice, that these negroes did not belong to Adam McDonald; and one witness, Mr. W. Smith, stated, that in a conversation with Gourdin, he' told him that they did not, and that Gourdin, looking hard at him, replied, “ if you know anything about it, keep it to yourself.” The precise time of this conversation is not -fixed by the written examination of the witness now before me, but it is, stated in connection with circumstances which clearly show that it was not until long after the bill of sale was executed, and probably not until after the death of Adam McDonald. This witness also testified as to the admission both of Adam McDonald and his widow and administratrix, not long before their respective deaths, that the negroes belonged to Samuel McDonald, and some of the other witnesses say, that they were understood to be the property of Samuel McDonald ; but no notice of the fact was brought home to Gourdin, otherwise than as above stated, and the question then recurs, whether he has a lien on them for his debt?
There is no law which requires a transfer of slaves, or other chattels, to be in writing, and possession, therefore, generally constitutes the only evidence of property. It is to that alone .which strangers look in treating with him in possession, and hence the rule laid down in Twyne's case, 3 Co. 80, (1 Smith L. C. 1,) which in some of the cases is said always to have been the law, that the possession of a chattel inconsistent with the right, of property, has, in controversies between the creditors of him in possession, and the legal owner, been always regarded as a badge of fraud, (see also Taylor vs. Jones, 2 Atk. 600 ; Russel vs. Hammond, 1 Atk. 16 ; Bates vs. Graves, 2 Ves. jun. 292.) In Edwards vs. Harben, 2 T. R. 594-5, Judge *256 Butler, in the case of a purchaser for a valuable consideration, lays down the rule even more strongly, and as founded on the unanimous concurrence of the Court, that unless possession accompanies and follows the deed, it is fraudulent and void as to creditors, and he remarks, that in Bucknal vs. Roiston, Pr. in Ch. 287, Sir E. Northey said, “ it had been ruled forty times, in his experience at Guildhall, that, if a man sell goods, and still" continue in possession, as visible owner, such a sale is fraudulent and void as to creditors, and that the law had been always so held.” If there be nothing but the absolute conveyance without the possession, that in point of law is fraudulent.
Cases where, according to the terms of the conveyance, or contract of sale, the seller is to retain possession for a limited time, do not properly fall within this rule : for there the possession is in conformity to the deed. But even in those cases, when the transaction is perfectly fair in the first instance, it may become fraudulent afterwards, if they are concealed, or if the rightful owner neglects to assert and pursue his claim, and thereby others are drawn in to deal with him in possession, in relation to the property, or trust him on the credit of it. Hungerford vs. Earle, 2 Vern. 261; 2 Johns. Ch., 48.
These were all cases of the seller retaining possession after the sale, and do not, perhaps, apply here in terms, for it may be said that the possession of Adam McDonald, under a loan from Samuel McDonald, was a fair and rightful possession; but they point out forcibly the application of the great principle, that he who does an act which is in itself calculated to deceive, and by which another, trusting to appearances, which he has no means of unveiling, is defrauded, shall himself bear the loss. What is this case ? Adam McDonald had had the possession of the negroes for nine or ten years, before he mortgaged them to Gourdin. He had, during all that period, exercised over them all the dominion of the rightful owner, without any interposition on the part of Samuel McDonald : the knowledge that he had them on loan was not brought home to Gourdin, and assuming, as we must, that he was ignorant of it, can there be any doubt *257 that he trusted to them, at least in some degree, as a security for his debt ? But that is not all. His debt is yet unpaid, and now, at the .expiration of a quarter of a century, during which time the interest must necessarily have accumulated, he is told, not by Samuel McDonald, for during his whole life he never exercised any act of ownership over them, but by volunteers, claiming as his representatives, that Adam McDonald’s possession was merely a loan, and that he had no property in them. Now, I am not prepared to say, either that the possession of Adam, per se, at the time he mortgaged, or the lapse of time since, is a legal bar to this claim; but they furnish, in my judgment, an irresistible presumption that Gourdin trusted him on the faith of that possession, and that, confiding in its continuance, he was satisfied with the security which the mortgage gave him, and this, the consequence of a secret act, done by Samuel, calculated to deceive, is, according to the principle before laid down, a fraud in law. This conclusion is greatly strengthened by the consideration, that the proof of the fact of the loan is extremely equivocal, and that the lapse of time, now five and thirty years, may have deprived the defendant of the means of disproving it.
This conclusion supersedes the necessity of considering the other questions raised in the cause. I will remark, however, that we concur with the Chancellor, that the complainants were not barred by the judgment of the Court, in the case of the Administrator of Adam McDonald et al. vs. Theodore Gour-din, for although the persons parties to that suit are very much the same, there they sued as representing Adam McDonald, and here as representing Samuel; nor were the rights of Samuel involved in that controversy.
The objection to the jurisdiction of the Court is expressly disclaimed by the counsel, and, notwithstanding the case stated in the bill is the action of trover, as remarked by the Chancellor, we are inclined to think that the evidence makes a case of Equity cognizance, and rather than turn the parties round, the Court would even now suifer an amendment by consent, so as *258 to meet it. The circumstance to which I allude is, that a part of these negroes had been seized by the Sheriff, under a process issued by the Commissioner in Equity, professedly under an order of the Court, and he was proceeding to sell them in satisfaction of Gourdin’s mortgage; - but, in fact, there was no order justifying such a process, and although that would have been the foundation of an action of trover, I incline to think that, regarding the property in possession of the Court, and under its control and direction, the complainants might have gone there for relief.
It is ordered and decreed, that the injunction heretofore granted, to restrain the defendants from selling the negroes conveyed, by way of mortgage, to defendant’s testator, by Adam McDonald, and now in possession of the complainants, be and the same is hereby dissolved. And it is further ordered and decreed, that unless the said complainants shall, within one month after notice of this decree, pay and satisfy the defendants the balance reported to be due by the said Adam McDonald, now deceased, to defendants’ testator, Theodore Gourdin, and the costs of this suit, that they do deliver to the Commissioner in Equity, for Georgetown District, to be sold by him, the said negroes mentioned in the said mortgage, and their issue and increase, or so many thereof as will be sufficient to produce, by sale, a sum sufficient to pay the said balance and the costs.
O’Neall, J., concurred.

Decree reversed.